**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SEAN WALKER,**

                    **Plaintiff,**

                                                    **5:04-CV-891**
          **vs.**                                   **(NAM/GJD)**

**JO ANNE B. BARNHART**
**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**
_____

**APPEARANCES:**                                   **OF COUSEL:**

Olinsky & Shurtliff, LLP                           Jaya Shurtliff, Esq.
P.O. Box 511422
186 West First Street
Oswego, New York 13126
_Attorney for Plaintiff_

Glenn T. Suddaby                                   William H. Pease
United States Attorney for the                     Assistant United States Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
and
Office of General Counsel                          Barbara L. Spivak
Social Security Administration                     Chief Counsel, Region II
16 Federal Plaza
New York, New York 10278                           Susan Reiss
_Attorneys for Defendant_                          Assistant Regional Counsel


**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      Introduction**

        This action, brought by an unsuccessful claimant for disability benefits, requires the Court

to determine whether the Social Security Administration properly concluded that the claimant,

although severely impaired, was not entitled to such benefits because of his remaining ability to perform sedentary work. The Court referred this matter to United States Magistrate Judge Gustave J. DiBianco, who reported that the Administration's decision was supported by substantial evidence, and recommended that the Court uphold the denial of benefits. The claimant now objects to Magistrate Judge DiBianco's Report and Recommendation, arguing that the Commissioner's determination of non-disability was improper because it was based upon an inadequate administrative record and erroneous application of the Medical-Vocational Guidelines.

The Court, having considered the Report and Recommendation, the objections thereto, and the entire administrative record, finds that the Commissioner failed to properly develop the administrative transcript. In addition, because of the evidentiary support for the claimant's non-exertional limitations, it was error for the ALJ to rely exclusively upon the Medical-Vocational Guidelines without first evaluating the effect of these limitations on Walker's ability to perform sedentary work. The Court therefore remands this case to the Commissioner for further development of the record and a determination on disability pursuant to the proper legal standards.

**II.     Background**

    **A.     Procedural History**

On October 23, 2000, at age 20, Sean Walker filed applications for disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Administrative Transcript ("T.") at 225.) *See* 42 U.S.C. § 401 et seq. (Title II); 42 U.S.C. § 1381 et seq. (Title XVI). He alleged disability since June 19, 2000 due to a congenital heart condition along with chronic pain in his back, left knee, and hands. (T. 79, 86.)

Walker also reported emotional stress and depression as contributing causes of his disability. (T. 93.)

The Commissioner denied Walker's applications initially and upon reconsideration. (T. 34-37, 231-233, 40-41, 235-238.) Walker requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 2, 2002. ALJ Daniel Shellhamer issued an unfavorable decision on October 4, 2002. (T. 19-27.) He determined that although Walker had severe impairments that prevented him from working in certain jobs, he was not disabled within the meaning of the Act. Consequently, the ALJ found Walker ineligible for disability benefits.

ALJ Shellhamer's decision became final when, on May 27, 2004, the Appeals Council denied the claimant's request for review. (T. 7-9.) Walker filed this civil action on July 26, 2004, seeking judicial review of the Commissioner's decision.

**B.     Medical History**

The claimant, Sean Walker, was born on April 10, 1980 with a complex congenital heart condition known as D-transposition of the great arteries. (T. 223.) The administrative transcript suggests that Walker underwent two significant cardiac procedures during his childhood: a balloon atrial septostomy on the day he was born, and subsequent surgical correction of the transposition of the great vessels, called a Senning repair, on January 21, 1985. (T. 195.) However, these surgical procedures were merely palliative, and did not cure Walker's underlying congenital cardiac impairment. (T. 223.)

The records provided by pediatric cardiologist Dr. Daniel Kveselis, who treated the claimant from 1995 to 2000, indicate that Walker suffered from persistent right ventricular systolic dysfunction during those years. In June of 2001, Walker ceased treatment with his pediatric cardiologist, and was referred to adult cardiologist Dr. John Altieri for examination and

testing.  (T. 212.)  Dr. Altieri ultimately concluded that a pediatric specialist would be better suited to treat Walker's complex condition; nevertheless, his final report, dated July 16, 2001, stated that Walker was a candidate for disability as a result of "expected physical disability from the systolic dysfunction." (T. 218-219.)

Walker elected not to return to the care of a pediatric specialist, and was examined by adult cardiologist Dr. Charles Perla on October 1, 2001.  (T. 196.)  Dr. Perla noted that Walker's July 2001 EKG demonstrated a severely enlarged right ventricle with generalized right ventricular hypokinesis, along with abnormal septal motion due to an intraventricular conduction defect.  (T. 196.)  Consequently, on December 19, 2001, Dr. Perla completed a Cardiac Medical Source Statement in support of Walker's application for disability benefits.  (T. 200-205.)

In addition to his cardiac impairment, Walker claims to suffer from chronic pain in his lower back, left knee, and hands.  Walker's knee complaints appear to have originated in May of 1996, when he sustained a laceration on his left knee.  (T. 207.)  Four years later, in January of 2001, Walker was again treated by an orthopedic specialist as a result of pain in his left knee. The doctor did not find evidence of bone injury or a meniscal tear, and referred Walker to physical therapy.

Walker's lower back symptoms manifested in November of 2000, at which time he was diagnosed as having a low back sprain.  (T. 162.)  An x-ray of the claimant's spine revealed mild scoliosis.  (T. 182.)  He received conservative treatment, including a prescription for ibuprofen. (T. 164.)

Consultative orthopedic specialist Dr. Richard Weiskopf examined Walker on February 9, 2001 in connection with his ongoing complaints of knee, hand, and back pain.  (T. 176-179.)  Dr. Weiskopf recorded his impressions of Walker's condition as follows:  (1) chronic low back pain

4

with the possibility of lumbosacral strain; (2) left knee pain with possibilities of knee strain or osteochondritis; (3) bilateral hand strain with the possibility of carpal tunnel syndrome; (4) a history of congenital heart disease; and (5) hypertension.  (T. 179.)

### C.    The ALJ's Decision

The Social Security Act (the "Act") authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with "disabilities."  For both types of benefits, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

An administrative law judge must follow a five-step sequential evaluation process when considering a claim for disability benefits.  20 C.F.R. §§ 404.1520, 416.920; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  The determination of a claimant's request for benefits should therefore proceed as follows:

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant

numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citations omitted).

In the present case, ALJ Shellhamer followed the five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920.  At step one of the analysis, he determined that Walker had not engaged in substantial gainful activity since the alleged onset date.  At step two, the ALJ found that Walker's congenital heart disease and the chronic pain in his knee and back were "severe impairments" within the meaning of the regulations, but Walker's depression and emotional stress did not qualify as such.  At the third step of his analysis, the ALJ determined that Walker's impairments did not meet or equal any of the impairments listed in Appendix 1 of the regulations.  *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.  At the fourth step, ALJ Shellhamer found that Walker, although unable to return to his former employment, could perform all exertional and non-exertional requirements of work except for lifting or carrying ten pounds occasionally, and standing or walking more than two hours in an eight hour workday.

At the fifth step, the claimant has shown his disability, and "the burden . . . shifts to the [Commissioner] to prove . . . that the claimant is capable of working."  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  Here, ALJ Shellhamer relied upon the Medical-Vocational Guidelines (the "grids") set forth in the regulations to determine that there are jobs within the national economy that Walker could perform despite his severe impairments.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  The ALJ therefore concluded that, because Walker could perform substantially the full range of sedentary work, he was not disabled within the meaning of the Act.

### D.    The Report and Recommendation

The Court referred this case to United States Magistrate Judge Gustave J. Di Bianco for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d).

Magistrate Judge DiBianco found that (1) the ALJ adequately developed the administrative record and did not err when he requested an opinion from a medical expert as to whether Walker's congenital heart disease met or equaled a listed impairment; (2) there was substantial evidence in the record to support the ALJ's conclusion that Walker could perform a full range of sedentary work; (3) the ALJ properly relied on the Medical Vocational Rules to sustain the Commissioner's burden at step five; and (4) there was substantial evidence in the record to support the ALJ's rejection of Walker's complaints of disabling pain.  Accordingly, Magistrate Judge Di Bianco recommended that the Court affirm the Commissioner's decision, and dismiss the complaint.

Presently before the Court are Walker's objections to the Report and Recommendation. When a party timely objects to a magistrate judge's recommendation, this Court will conduct a *de novo* review of the objected-to portions.  28 U.S.C. § 636(b)(1).  The Court may also engage in a *de novo* review of any other aspects of a recommendation as it sees fit.  *Thomas v. Arn*, 474 U.S. 140, 154 (1985).  After performing its review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b).

**III.   Discussion**

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw*, 221 F.3d at 131.  The Court may also set aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Walker objects to Magistrate Judge DiBianco's Report Recommendation on two grounds,

and requests that the Court remand this action to the Commissioner for further administrative proceedings.  Specifically, Walker alleges (1) that the magistrate judge applied an incorrect legal standard in connection with the ALJ's duty to solicit additional opinions from the examining cardiologists; and (2) that the magistrate judge erred in affirming the ALJ's use of the Medical Vocational Guidelines to direct a finding of "not disabled" under the Act.

### A. Equivalence & Duty to Develop the Record

The claimant argues that ALJ Shellhamer's request for a consultative physician's evaluation and opinion of the case is evidence that he viewed the record as incomplete for a determination about whether Walker's condition qualified as or was equivalent to one of the impairments listed in Appendix 1 of the regulations.  Walker asserts that, if the ALJ thought the record was inadequate to make a determination of disability, the ALJ had an obligation to re-contact the treating physicians for additional information before seeking the opinion of a non-examining medical source.  Because ALJ Shellhamer contacted a medical expert and did not attempt to obtain additional information from the claimant's treating physicians, Walker maintains that the ALJ deviated from the procedures set forth in the regulations and failed to apply the proper legal standards.

Magistrate Judge DiBianco found that the ALJ committed no error in seeking the opinion of an outside cardiologist as to whether Walker's impairments met or equaled any of those listed in Appendix 1.  Walker objects to this aspect of the Report and Recommendation, asserting that Magistrate Judge DiBianco erroneously placed the burden of developing the record on plaintiff, applied an incorrect legal standard, and improperly supplied a rationale to justify the Commissioner's decision.

Social Security Administration regulations specify that the Administrative Law Judge has

an affirmative obligation to develop the administrative record due to the non-adversarial nature of

a hearing on disability benefits.  20 C.F.R. § 404.1512(d); *see also Echevarria v. Secretary of*

*Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982).  The Second Circuit has held that this

responsibility exists regardless of whether the claimant is represented by counsel.  *Perez*, 77 F.3d

at 47; *Shaw* 221 F.3d at 131.  Remand is appropriate where the ALJ's neglect in pursuing

information led to gaps in the administrative record.  *Berry v. Schweiker*, 675 F.2d 464, 469 (2d

Cir. 1982).

Although ALJ Shellhamer consulted a non-examining medical source prior to rendering

his decision, there is no reason to believe that he did so due to the inadequacy of the record.  In

fact, the regulations specify that an ALJ has the duty to consult a medical advisor when making a

determination on medical equivalence.  SSR 96-6p; *see also Uhlig v. Apfel*, No. 97-7629, 1999

U.S. Dist. LEXIS 8345, at *23 (S.D.N.Y. June 1, 1999).  Furthermore, Walker does not argue that

the opinions of his treating physicians were inadequate, nor does he challenge the ALJ's reliance

on the medical expert's opinion.

ALJ Shellhamer's fulfillment of his obligation to consult a medical expert on the issue of

equivalency does not evidence the record's inadequacy, and consequently, is not a proper basis

upon which to find a violation of the ALJ's duty to develop the record.  Magistrate Judge

DiBianco correctly determined that the ALJ committed no error in seeking the opinion of an

outside cardiologist as to whether Walker's impairments met or equaled any of those listed in

Appendix 1.

**B.  Medical Opinion Evidence & Duty to Develop the Record**

The reports of Dr. Charles Perla, cardiologist who began treating the claimant in October

of 2001, specify limitations on Walker's ability to sit and stand.  The ALJ recognized Dr. Perla's

opinion, but gave it "little weight."  In support of his decision, the ALJ stated that Dr. Perla is a cardiologist, and that his physical examination of Walker did not document any orthopedic impairment that would substantiate those limitations.  The ALJ found that Perla's statement that Walker was capable of low-stress work was inconsistent with the remainder of his opinion and cited this inconsistency in support of his decision to dismiss the physician's opinion.

According to the regulations, an ALJ cannot reject the diagnosis of a treating physician without first attempting to fill any gaps in the administrative record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Dr. Perla's assessment of Walker's limitations on sitting and standing was, as the ALJ recognized, totally without support in the record.  However, a treating physician's "failure to include [support] for the findings in his report does not mean that such support does not exist." *Rosa*, 168 F.3d at 80 (citation omitted).  Rather than concluding that Dr. Perla's findings were unsubstantiated, the ALJ had an obligation to re-contact the physician for additional information and explanation.  The failure to do so resulted in an incomplete record, and was legal error by the ALJ.

### C.  Medical Opinion Evidence

Dr. John Altieri, who treated the claimant during June and July of 2001, stated in his report that Walker "is a candidate for disability based on the expected physical disability from the systolic dysfunction" of his heart's right ventricle.  (T. 218.)  ALJ Shellhamer mentioned Dr. Altieri's statement in his decision, but refused to give any weight to the physician's opinion. Indeed, Dr. Atieri's opinion that Walker "is a candidate for disability" is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner.  See 20 C.F.R., section 404.1527(e)(1); Snell v. Apfel, 177 F.3d 128, 133 (2d CIr. 1999).  Accordingly, Walker's argument is without merit.

10

### D.  Use of the Medical-Vocational Guidelines

Walker objects to the ALJ's use of the Medical-Vocational Guidelines in reaching the conclusion that he is "not disabled" for purposes of social security benefits.  The claimant insists that, in addition to fatigue and shortness of breath caused by his heart condition, he suffers from environmental and postural limitations that significantly diminish the range of work he is able to perform.  The ALJ did not take these limitations into account when evaluating the claimant's present ability to perform work.  Walker asserts that the ALJ's exclusive use of the Medical-Vocational Guidelines in making a determination on disability was improper, and that his case should therefore be remanded to the Administration for further analysis.

When a claimant is not engaging in substantial gainful activity, and is prevented by a severe impairment from performing his past relevant work, the Commissioner bears the ultimate burden of proving the existence of alternative gainful employment that the claimant could perform.  *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  Ordinarily, if the claimant is restricted only by exertional limitations, the Commissioner may satisfy this burden "by resorting to the applicable grids."  *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).  Exclusive reliance upon the grids, however, is precluded when the claimant also has significant nonexertional limitations that limit the range of work he can perform.  *Id.* at 39.  Instead, the Commissioner must present the testimony of a vocational expert in order to satisfy her burden of proof.  *Bapp*, 802 F.2d at 605-606.

Walker claims that he suffers from significant non-exertional limitations, including the inability to tolerate certain environmental conditions.  His asserted environmental restrictions are supported by Dr. Perla, who noted that Walker should avoid all exposure to extreme cold or heat.  (T. 202.)  Dr. Perla also indicated that Walker should avoid even moderate exposure to wetness,

humidity, and poor ventilation, among other conditions.  (T. 202.)

Walker's asserted postural limitations also find support in the administrative record.  Dr. Weiskopf, the examining orthopedic physician, attested to moderate limitations on the claimant's ability to bend, and noted that Walker was unable to squat.  (T. 178-179.)  The residual functional capacity assessment, performed by non-examining physician Dr. Naveed Siddiqi, lends further validation to Walker's claimed postural limitations.  (T. 182-186.)  Dr. Siddiqi's review of the record led him to conclude that Walker experienced occasional limitations on climbing, bending, stooping, kneeling, crouching, and crawling.  (T. 183.)

The ALJ acknowledged Walker's exertional limitations, but failed to adequately consider the postural and environmental restrictions indicated by the examining physicians.  ALJ Shellhamer applied the grids to determine Walker's disability status, even though they precluded his nonexertional limitations from being taken into account.  The ALJ did not obtain the testimony of a vocational expert, nor did he provide evidence or examples of jobs that Walker could perform.  Consequently, the ALJ's determination of Walker's non-disability was not supported by substantial evidence and was based upon legal error.

The Second Circuit has explained that "a remand is proper where the error is found in an ALJ's failure to apply correctly the distinction between cases where reliance on the grid suffices and those where the testimony of a vocational expert is essential to the denial of benefits."  Butts v. Barnhart, 388 F.3d 377, 387 (2d Cir. 2004).  Since the record in this case contains no testimony from a vocational expert, it is incomplete, and "further findings are appropriate to assure the proper disposition of [the] claim."  Id. (quotations omitted).  Thus the Court remands this case to the Commissioner for further findings consistent with this Memorandum-Decision and Order.

**IV.    Conclusion**

For the foregoing reasons, it is hereby

ORDERED that the Report and Recommendation is rejected to the extent it recommends a conclusion that the ALJ properly accorded Dr. Perla's opinion little weight and that the ALJ properly determined at step five that a finding of no disability was required after consideration of the grids; and it is further

ORDERED that the Report and Recommendation is otherwise accepted in its entirety; and it is further

ORDERED that this matter is remanded to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order

IT IS SO ORDERED.

September 30, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

-13-

-14-