**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SEAN WALKER,**

                    **Plaintiff,**

  vs.                                            5:04-CV-891
                                                         (NAM/GJD)

**MICHAEL J. ASTRUE*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

Olinsky & Shurtliff, LLP                 Jaya Shurtliff, Esq.
P.O. Box 511422                           Howard Olinsky, Esq.
186 West First Street
Oswego, New York 13126
*Attorney for Plaintiff*

Andrew T. Baxter                        Susan Reiss, Esq.
Acting United States Attorney for the      Assistant Regional Counsel
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
and
Office of General Counsel               Barbara L. Spivak, Esq.
Social Security Administration          Chief Counsel, Region II
16 Federal Plaza
New York, New York 10278
*Attorneys for Defendant*

      ** On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in this action.

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Sean Walker moves for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Dkt. No. 16). The Commissioner opposes plaintiff's motion on the grounds that the decision was substantially justified and further, that the amount of fees requested is excessive. (Dkt. No. 17).

## II.  BACKGROUND AND PROCEDURAL HISTORY

Familiarity with the history in the case is assumed based on this Court's previous Memorandum-Decision and Order. *See Walker v. Barnhart*, 04-CV-891, Dkt. No. 14 (Sept. 30, 2007) (Memorandum-Decision and Order). On October 23, 2000, plaintiff filed an application for disability insurance benefits ("DIB"). (T. 225)[1]. Plaintiff's application was denied and an administrative hearing was held before an ALJ. (T. 19). On October 4, 2002, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 19-27). On May 27, 2004, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. (T. 7). On July 26, 2004, plaintiff brought the above-captioned action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny his application for social security disability benefits. (Dkt. No. 1). Both parties moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 10). This matter was referred to United States Magistrate Judge Gustave DiBianco for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d).

On February 1, 2006, Magistrate Judge DiBianco recommended that this Court enter judgment on the pleadings affirming the Commissioner's decision denying disability and

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 6.

dismissing plaintiff's claims. (Dkt. No. 11). On February 16, 2006, plaintiff objected to the Report-Recommendation on two grounds: (1) the Magistrate Judge applied an incorrect legal standard regarding the ALJ's duty to solicit "additional opinions" from treating and examining physicians; and (2) the Magistrate Judge erred in affirming the ALJ's use of the Medical Vocational Guidelines ("the grids") to direct a finding that plaintiff was not disabled. (Dkt. No. 12).

On September 30, 2007, after considering the Report-Recommendation and plaintiff's objections, this Court vacated the Commissioner's determination and remanded the case for further proceedings. (Dkt. No. 14, p. 13). This Court found that the ALJ had an obligation to re-contact plaintiff's cardiologist for additional information. (Dkt. No. 14, p. 10). This Court further concluded that since the ALJ did not obtain testimony from a vocational expert, the ALJ's decision of non-disability was not supported by substantial evidence. (Dkt. No. 14, p. 13). On November 26, 2007, plaintiff filed the within motion seeking attorney's fees in the sum of $7,777.50. (Dkt. No. 16).

## III.   DISCUSSION

The EAJA provides:

> [A] court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. 2412(d)(1)(A). In order for a party to be awarded attorney's fees under the EAJA, the plaintiff must demonstrate that he or she: 1) is the prevailing party; 2) eligible to receive an award; 3) enumerate the amount sought; 4) show the rate at which fees were computed; and 5)

allege that the position of the United States was not substantially justified. *See* § 2412(d)(1)(B).

In this case, plaintiff claims that an EAJA award is available as: (1) plaintiff's net worth did not exceed $2,000,000 at the time the action was filed; (2) plaintiff was a "prevailing party" in a case against the government; and (3) the position of the United States was not substantially justified.[2] (Dkt. No. 16, pp. 3-4). The Commissioner asserts: (1) the ALJ's decision was substantially justified within the meaning of the EAJA; (2) even if the Court finds that an award of attorney's fees is appropriate, plaintiff's fee request is excessive; and (3) under the EAJA, the fees belong to plaintiff and not his counsel. (Dkt. No. 17).

## A. **Substantial Justification**

Courts have held that the substantially justified standard:

[i]s intended to caution agencies to carefully evaluate their case and not to pursue those which are weak or tenuous. At the same time, the language of the section protects the government when its case, though not prevailing, has a reasonable basis in law and fact.

*Cohen*, 837 F.2d at 582 (quoting H.R.Rep. No. 96-1418, 96th Cong., 2d. Sess., 11 (1980), reprinted in 1980 U.S.C.C.A.N. 4993); *see also Henriquez v. Chater*, 1997 WL 45351, at *1 -2 (S.D.N.Y. 1997). The party seeking attorney's fees must allege that the position of the Government was not "substantially justified." *See Butts v. Astrue*, 565 F.Supp.2d 403, 406 (N.D.N.Y. 2008) (citing 28 U.S.C. § 2412(d)(1)(B)). Once the plaintiff has done so, the burden shifts to the Commissioner to establish that its opposition was substantially justified. *See Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999). In order to determine whether the Government was "substantially justified, courts are to apply a standard of

---

[2] Defendant does not object to plaintiff's claim that he is a "prevailing party" within the meaning of 28 U.S.C. § 2412(d)(1)(B).

reasonableness". *Green v. Bowen*, 877 F.2d 204, 207 (2d Cir. 1989) (citing *Pierce v. Underwood*, 487 U.S. 522, 565 (1988)). The legislative history of the EAJA indicates that the substantial justification standard "should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case". *Cohen v. Bowen*, 837 F.2d 582, 585 (2d Cir. 1988) (quoting cases and legislative history) (citations and internal quotation marks omitted). However, the Government has the burden of proof on the substantial justification issue and a "strong showing" is required to satisfy this burden. *Envtl. Defense Fund, Inc. v. Watt*, 722 F.2d 1081, 1085 (2d Cir.1983); *see also Rosado v. Bowen*, 823 F.2d 40, 42 (2d Cir. 1987) (holding that the government must show that its action was justified in law and fact). The Commissioner cannot prevail by arguing that he was substantially justified in some of the positions he took if he was not substantially justified on all the positions. *Maxey v. Chater*, 1996 WL 492906, at *3 (N.D.N.Y. 1996) (citing *Myers v. Sullivan*, 916 F.2d 659, 666 n. 5 (11th Cir. 1990)) (government must establish that all its litigation positions were substantially justified).

In this case, plaintiff contends that the position of the United States was not substantially justified. Defendant argues that this case "presents a genuine dispute where reasonable people could differ as to the outcome". (Dkt. No. 17, p. 8). Specifically, defendant claims that it was reasonable for the ALJ not to re-contact Dr. Perla regarding plaintiff's "sitting and standing limitations". (Dkt. No. 17, p. 5). Defendant further asserts that it was reasonable for the ALJ to conclude that plaintiff did not have any nonexertional limitations that significantly affected plaintiff's potential occupational base requiring the ALJ to seek the testimony of a vocational expert. (Dkt. No. 17, p. 6).

**1.     ALJ's Duty to Develop Record**

5

An ALJ must affirmatively develop the record in light of the "essentially non-adversarial nature of a benefits proceeding", even if the claimant is represented by counsel. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations.[3] *Devora v. Barnhart*, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002). Courts have consistently held that an ALJ must re-contact a treating physician to supplement or clarify when the record is incomplete or ambiguous. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *see also Torres v. Barnhart*, 2007 WL 1810238, at *11 (S.D.N.Y. 2007) (citing *Hankerson v. Harris*, 636 F.2d 893, 896 (2d Cir. 1980); *see also Peed v. Sullivan*, 778 F.Supp. 1241, 1247 (E.D.N.Y. 1991); *see also Rosado v. Barnhart*, 290 F.Supp.2d 431, 439-41 (S.D.N.Y. 2003).

In an EAJA fee motion, the fact that the ALJ failed to develop the record is not an issue for the Court to address. *Horton v. Barnhart*, 2004 WL 2375816, at * 2 (S.D.N.Y. 2004). Rather, the Court must determine whether a reasonable person could have regarded the record as an adequate one on which to base a decision. *Horton*, 2004 WL 2375816, at *2. Courts in the Second Circuit have commonly allowed EAJA fees in cases where the treating physician rule was abrogated. *See Henriquez v. Chater*, 1997 WL 45351, at *3 (S.D.N.Y. 1997) (internal citations omitted).

In this case, Dr. Perla, plaintiff's cardiologist, provided an opinion on plaintiff's ability to sit and stand. (Dkt. No. 14, p. 9). Defendant asserts that Dr. Perla did not examine plaintiff for

---

[3] Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

alleged orthopedic impairments. (Dkt. No. 17, p. 4). Further, defendant contends that plaintiff had limited treatment for orthopedic problems and objective findings were "modest". (Dkt. No. 17, p. 4). Therefore, defendant argues that it was reasonable for the ALJ not to re-contact Dr. Perla regarding the limitations relating to plaintiff's orthopedic problems. (Dkt. No. 17, p. 5).

In the Memorandum-Decision and Order, this Court discussed the treating physician rule and held that "rather than concluding that Dr. Perla's findings [regarding plaintiff's limitations on sitting and standing] were unsubstantiated, the ALJ had an obligation to re-contact the physician for additional information and explanation". (Dkt. No. 14, p. 10). Based upon the treating physician rule and the lack of any attempt by the ALJ to clarify this issue with Dr. Perla, a reasonable person could have not have regarded the record as complete. Therefore, defendant's position of defending the ALJ's actions was not substantially justified.

**2.     Plaintiff's Non-Exertional Limitations and the ALJ's Use of the Grids**

Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids. *Pratts,* 94 F.3d at 39. The grids "take into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa*, 168 F.3d at 79. The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment

indicated by the medical vocational guidelines." *Bapp*, 802 F.2d at 605-06.

In this case, defendant concedes that Dr. Perla opined that plaintiff should avoid exposure to extreme cold and heat and moderate exposure to wetness, humidity, noise, fumes, odors, dusts, gases and hazardous machinery and heights. (Dkt. No. 17, p. 6). However, defendant claims that the ALJ was not required to accept these conclusions as "no other physician placed these environmental limitations on plaintiff". (Dkt. No. 17, p. 8). Moreover, defendant contends that even if plaintiff suffered from these limitations, the limitations did not affect plaintiff's occupational base requiring the testimony of a vocational expert. (Dkt. No. 17, p. 6).

In the Memorandum-Decision and Order, this Court found that the ALJ, "failed to adequately consider the postural and environmental restrictions indicated by the examining physicians". (Dkt. No. 14, p. 12). Therefore, the Court concluded that the application of the grids to determine plaintiff's disability was legal error. (Dkt. No. 14, p. 12). As the ALJ's determination violated the holdings of *Pratts* and *Bapp*, the decision lacked reasonableness based in law and fact. *See Henriquez*, 1997 WL 452351, at * 4. Thus, in light of the Second Circuit precedents regarding the inadequacy in the use of grids, this Court concludes that the Commissioner was not substantially justified. *See Butts,* 565 F.Supp.2d at 406.

**B.     Reasonableness of Fee Request**

Plaintiff requests an award in the amount of $7777.50 for 48.5 hours of attorney work. (Dkt. No. 16, p. 2). Plaintiff contends that the hours spent were reasonable due to the unusual and complex nature of plaintiff's condition. (Dkt. No. 16, p. 4-5). Defendant argues that if this Court finds than an award of fees is appropriate, the Court should not approve an upward adjustment from the normal range of hours (twenty to forty) generally deemed appropriate in social security

8

matters.[4]  (Dkt. No. 17, p. 12).

When assessing whether to award attorney's fees to a prevailing party, a court has broad discretion to determine whether the amount of time an attorney has expended is reasonable. *Crudele v. Chater*, 1997 WL 198076, at *5 (S.D.N.Y. 1997) (citing *Aston v. Secretary of Health and Human Servs*, 808 F.2d 9, 11 (2d Cir. 1986)).  The specific facts of each case determine what fee is appropriate. *Ferguson v. Apfel*, 2000 WL 709018, at *2 (E.D.N.Y. 2000) (citing *Hensley v. Eckerhart*, 261 U.S. 424, 429 (1983)).  District courts in the Second Circuit have held that, on average, an attorney spends twenty to forty hours on routine social security cases. *Cruz v. Apfel,* 48 F.Supp.2d 226, 231 (E.D.N.Y. 1999); *see also Grey v. Chater,* 1997 WL 12806, at *2 (S.D.N.Y. 1997); *Hogan v. Astrue*, 539 F.Supp.2d 680, 682 (W.D.N.Y. 2008).  Attorney's fees in excess of the routine twenty to forty hours will be awarded where the facts of the specific case warrant such an award. *Hinton v. Sullivan*, 1991 WL 123960, at *5 (S.D.N.Y. 1991); *see also Scott v. Astrue*, 474 F.Supp.2d 465, 467 (W.D.N.Y. 2007) (holding that case involving a brain tumor near the plaintiff's pituitary gland that affected hormone production and body functions was an unusual and complex matter).  When deciding what amount is appropriate, the court will not compensate or penalize counsel for her expertise. *See Laguna v. Secretary of Dep't of Health and Human Servs.*, 1992 WL 179215, at *4 (E.D.N.Y. 1992).

In certain instances, reductions in entries are necessary. *See Colegrove v. Barnhart,* 435 F.Supp.2d 218, 221 (W.D.N.Y. 2006) (holding that a reduction was necessary when a number of entries were billed in quarter-hour time increments for tasks that seemingly would not take a full fifteen minutes (i.e., enclosure letters, receipt and review of simple Orders from the Court and

---

[4] In plaintiff's brief, plaintiff requested an hourly rate of $142.59 for 2004; $158.717 for 2005; $163.39 for 2006; and $167.64 for 2007.  (Dkt. No. 16, p. 2).  Defendant does not oppose this portion of plaintiff's request.

letters for extensions of time)); *see also La Barbera v. Pass 1234 Trucking, Inc.*, 2007 WL 2908175, at *7 (E.D.N.Y. 2007) (reducing hours billed by 15% where method of billing was "not entirely accurate since [attorneys'] time is divided into fifteen minute increments instead of the more traditional six minutes."). Courts may also reduce entries if the number of hours spent on a task are excessive or if entries relate to clerical tasks. *See Greenridge v. Barnhart*, 2005 WL 357318, at *4 (W.D.N.Y. 2005)*; see also Destefano v. Astrue*, 2008 WL 623197, at *3 (E.D.N.Y. 2008). Moreover, time may be reduced when billing entries are less than precise. *Destefano*, 2008 WL 623197, at *3 n. 5.

While reviewing the fee application, the court is not required to "scrutinize each action taken or the time spent on it" when determining what is reasonable. *Hogan*, 539 F.Supp.2d at 683 (internal citations omitted) (holding that a reduction of approximately 5% in the total fee requested was appropriate)*; see also Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (holding that the Court has discretion simply to apply a reasonable percentage reduction "as a practical means of trimming fat from a fee application"); *see also New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (holding that district judge acted within his discretion when he chose to make percentage reductions in response to defendants' detailed claims that the fee application contained excessive and duplicative hours).

In this case, plaintiff requests recovery for a total of 48.5 hours. Defendant claims counsel expended 28 hours on substantive issues and 20 hours on "other types of tasks". (Dkt. No. 17, p. 11). After reviewing the administrative record, the papers submitted and the history of the case, the Court concludes that the hours are excessive and require some reduction. The Court notes that every task entry in counsel's itemization was billed in 1/4 hour increments (15 minutes).

(Dkt. No. 16). Further, plaintiff's counsel has "lumped" clerical tasks with attorney tasks (e.g., "finalize memorandum and electronically file") and has not provided detail regarding certain tasks (e.g., "[c]orrespondence with client", "telephone conference with client", or "[r]eview correspondence").

Upon review of plaintiff's submissions, the Court further finds that the time allocated to certain tasks was excessive. For example, plaintiff claims that 2 hours were expended by counsel to "[d]raft Summons and Complaint, make copies for filing with Clerk, prepare civil cover sheet". (Dkt. No. 16). However, the complaint is only one page in length. (Dkt. No. 1). Moreover, the entry is unreasonable as it contains clerical tasks. Further, plaintiff's counsel claims that a total of 17 ½ hours were spent on plaintiff's Memorandum of Law which included four arguing points. Plaintiff further claims that counsel expended 13 hours on the objections to the Report-Recommendation which included two arguing points. The Court has reviewed both of plaintiff's submissions and notes that the arguments, caselaw and statutory law cited in the objections are indistinguishable from the arguments and law set forth in the original Memorandum of Law. Thus, it was unreasonable for counsel to expend 5 hours for "review of file and legal research" for the objections when counsel had previously billed 7 hours for the same tasks in relation to the Memorandum of Law.

Finally, this case did not involve novel or complex legal or medical issues. Plaintiff's only argument in support of obtaining fees in excess of the "routine" 20 to 40 hours is that plaintiff's condition was "unusual and complex". (Dkt. No. 22, p. 4). In support, plaintiff cites to *Scott v. Astrue*, 474 F.Supp.2d 465 (W.D.N.Y. 2007). However, in *Scott*, the plaintiff underwent brain surgery at age nine for removal of a brain tumor and suffered serious impairments and from

11

impaired intellectual functioning. *Scott*, 474 F.Supp.2d at 467. More importantly, in that case, the Court determined that even though the case "presented unusual and more complex medication issues", the Court compensated plaintiff for a total of 51 hours of attorney time for a total award of $8253.33. *Scott*, 474 F.Supp.2d at 467. In this case, a matter that does not involve similar complex medical issues, plaintiff seeks 48.5 hours of attorney time. Based upon the foregoing, the Court finds that amount to be unreasonable.

Accordingly, after reviewing the record and considering the work performed, the Court reduces the total fee by 20% for an attorney fee award of $6222.50.

**C.     To Whom is Award Paid**

Plaintiff's counsel argues that the EAJA fees are intended to compensate counsel and therefore, payment should be made directly to the attorney. (Dkt. No. 16, p. 10). Plaintiff claims that pursuant to the Savings Provision, Congress intended that EAJA fees should be paid to counsel. Plaintiff also claims that paying fees directly to plaintiff would discourage representation and create "risk" for the attorney. (Dkt. Nos. 17, 22). Defendant contends that plaintiff, as the prevailing party, is entitled to EAJA fees rather than plaintiff's counsel. (Dkt. No. 17, p. 18).

The Second Circuit has not addressed the issue of whether attorney's fees under the EAJA are made payable to plaintiff or plaintiff's attorney. However, the majority of district courts in this Circuit have held that attorney's fees under the EAJA are awarded to the plaintiff. *Soto-Valentin v. Heckler*, 619 F.Supp. 627, 629 n.2 (E.D.N.Y. 1985) (holding that under the EAJA, only a prevailing party, and not his or her attorney, may be awarded fees); *see also Tripodi v. Heckler*, 100 F.R.D. 736, 738 (E.D.N.Y. 1984) (holding that the statute only allows an award of

fees to the prevailing party); *see also Bagley v. Comm'r of Social Sec.*, 2008 WL 3925632, at *5 (N.D.N.Y. 2008) (holding that attorney's fees are awarded to the plaintiff with the expectation that the plaintiff will honor obligations to his attorney); *Hogan*, 539 F.Supp.2d at 683-684 (deferring to "the bulk of cases which have addressed the issue" and holding that fees belong to the prevailing party).

Further, the Tenth and Eleventh Circuits have held that the attorney fee award is payable to the plaintiff and not the attorney. *See Brown v. Astrue*, 2008 WL 822267 (10th Cir. 2008) (holding that the contractual agreement between the plaintiff and his counsel was a collateral matter and not necessary to be addressed in the context of an EAJA fees motion); *see also Manning v. Astrue*, 510 F.3d 1246 (10th Cir. 2007) (holding that the statutory language, legislative history and caselaw dictate that the award of EAJA attorneys fees belongs to the plaintiff and not her attorney; *Reeves v. Astrue*, 526 F.3d 732, 733 (11th Cir. 2008) (holding that the statute's explicit reference to the "prevailing party" unambiguously directs the award of attorney's fees to the party who incurred those fees and not to the party's attorney).[5]

In this case, plaintiff sets forth several arguments in support of awarding the fees to counsel.[6] (Dkt. No. 22, p. 10). However, none of the arguments are novel and have already been addressed by district courts in this Circuit, the Tenth Circuit and the Eleventh Circuit. Therefore, the Court holds, consistent with bulk of district courts in this Circuit, that the EAJA attorney's fee

---

[5] The Court is aware of the recent Eighth Circuit decision which held that attorney's fees are awarded to the prevailing parties' attorneys. *Ratliff v. Astrue*, 540 F.3d 800, 801 (8th Cir. 2008). However, it appears from a review of the decision that the Court was compelled to rule in favor of awarding fees to the prevailing parties' attorney due to precedent. *Id*. However, the Court concluded that, "[w]ere we deciding this case in the first instance, we may well agree with our sister circuits and be persuaded by a literal interpretation of the EAJA . . .". *Id*. at 802.

[6] In plaintiff's Amended Reply Memorandum, plaintiff provided citations to recent cases and rulings on this issue. (Dkt. No. 22, p. 10). The cases are not Second Circuit cases and are holdings from district courts that are not within the Second Circuit.

award is payable directly to plaintiff.

## IV. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that plaintiff's motion for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, is **GRANTED** in the amount of $6222.50, with the award to be made payable to plaintiff.

**IT IS SO ORDERED.**

Dated: October 23, 2008
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge